Jeannette M. GATES, Plaintiff,

v.

**GEORGIA–PACIFIC CORPORATION, a corporation, Defendant.**

Civ. No. 69–101.

United States District Court,
D. Oregon.

Sept. 10, 1970.

Keith Burns, Portland, Or., Jack Greenberg, Norman C. Amaker, Robert Belton, New York City, for plaintiff.

King, Miller, Anderson, Nash & Yerke, William B. Crow, Douglas M. Ragen, Portland, Or., for defendant.

## MEMORANDUM OPINION

ALFRED T. GOODWIN, Judge.

Jeannette Gates is a 43-year-old Negro woman who applied for an accounting position with Georgia Pacific in response to newspaper advertising. Georgia Pacific, at the time of the application, had four vacancies in Portland in the cost-accounting department of a new division of the company. Three of the vacancies were filled by intracompany transfer, and one was filled by a man referred by an employment service. Plaintiff was not one of those employed, and she brings this action under Title VII of the 1964 Civil Rights Act (42 U.S.C. 2000e–5), claiming that the defendant failed to employ her because of her race.

■ A preliminary question was raised by the defendant concerning the timeliness of plaintiff's complaint in this case. I find that a position to which she could have been appointed was vacant on March 17, 1967, and was filled on March 28, 1967. She filed her complaint with the Equal Employment Opportunity Commission on October 12, 1967, well within the time provided by Section 2000e–5(d).

■ I find that Mrs. Gates was fully qualified for employment by reason of education and experience. She received a bachelor's degree in business administration from West Virginia State College in 1948, and a Master of Business Administration degree from New York University in 1949. Mrs. Gates took 23 hours of accounting in her undergraduate program, and in her master's program became qualified to teach accounting. She taught accounting for two years at Texas Southern University, and worked as an accountant in a federal agency in Japan while her husband was engaged in United States government service in that country. Mrs. Gates has worked as an accountant for the City of Portland, and has taught accounting at community colleges in Oregon. In recent years, she has been primarily occupied with the duties of a housewife and mother, but has done some part-time accounting, both teaching and contract work.

■ Mrs. Gates was academically the best prepared of any of the persons interviewed by the defendant in connection with the vacancies which were filled during March of 1967, but some of the other applicants had relevant experience in one or more of the accounting departments of the defendant corporation. Experience within the employing corporation is obviously a valid criterion for promotion and transfer.

One of the Georgia Pacific employees who was preferred over Mrs. Gates, however, had no academic preparation for a career in accounting, and only meager relevant experience in his prior work with the defendant. The assets which principally commended him for transfer were loyalty, industry, and interest in his work. These are valid criteria for promotion, but when a cost-accounting position is advertised, an accounting background is also relevant. Here the successful applicant's background was conspicuously unimpressive in comparison with that of the plaintiff. An inference of discrimination can be drawn from the defendant's preference of this individual.

The man who was employed as the result of an agency referral was told during his interview to telephone the next day and find out whether or not he would be employed. He telephoned the next day, and was advised that he would start to work immediately. The plaintiff, on the other hand, was never advised by anyone representing Georgia Pacific how she might learn whether or not she was to be employed. While this failure of communication may not be direct evidence of discrimination, this difference in the treatment of two interviewees on or about the same day is consistent with the plaintiff's theory of discrimination.

Upon the whole record, I find that Mrs. Gates carried the burden of proof of a prima facie case of racial discrimination.

■ The purpose of Congress in passing Title VII was to encourage a maximum effort on the part of employers subject to the statute to eliminate racial dis-

crimination from their employment decisions. This purpose will not be served by turning a plaintiff out of court merely because direct evidence of discrimination is unimpressive. Such evidence is virtually impossible to produce.

After the plaintiff's circumstantial evidence had made a prima facie case of discrimination, it was in order to look to the defendant for an explanation. A defendant in these cases knows whether or not it failed to hire a person for reasons which would exonerate the defendant under 42 U.S.C. 2000e–5(g). The defendant's evidence on this score was not convincing.

The defendant, as noted, filled three of the four cost-accounting vacancies by intracompany transfers. The witnesses for the defendant testified to the many sound management reasons which commend the promotion and transfer of individuals already on a company's payroll.

Such a policy, if it does not result in unlawful employment practices, does not violate the statute. However, this defendant has few, if any, Negro accountants or accounting clerks at the entry levels. A company policy of recruiting all cost accountants from among accountants and clerks already employed by the company would result in de facto exclusion of Negroes from the better jobs whether the policy is intended to have that result or not.

When a large company which has no Negro employees in a certain promotion line recruits and promotes primarily within that line, the result can be inherently discriminatory. See Jones et al. v. Lee Way Motor Freight, Inc., 431 F.2d 245 (10th Cir., 1970). I believe that the situation facing Negro accountants seeking employment with this defendant was inherently discriminatory and that affirmative action was needed to break the chain of discrimination.

When a qualified applicant who is not on the company employment rolls responds to an advertisement, he is justified in believing that the company is recruiting outside its own employee ranks. In this case, the defendant had a clear-cut opportunity to hire a qualified Negro to fill a semiprofessional vacancy in a job classification from which Negro workers would be permanently excluded so long as the defendant chose to fill such vacancies by intracompany transfer. I do not believe the defendant searched its own employee rosters with as much energy before it advertised publicly for cost accountants as it did after the plaintiff had applied for one of the positions. The inference of an unlawful practice therefore is strong.

I believe the testimony on the part of the defendant's top management to the effect that the defendant is opposed to racial discrimination, as a matter of company policy, but I find that some degree of racial discrimination nonetheless crept into the processing of this plaintiff's application.

▉ The plaintiff has not alleged that she was the victim of discrimination based upon her sex or her age, but only of discrimination based upon race. Race may not have been the sole basis for the discrimination which I find in this case, but race need not be the sole consideration if an unlawful employment practice is established.

Based upon the foregoing findings, it will be the judgment of the court that the defendant be enjoined from further engaging in unlawful employment practices against this plaintiff and the class she represents; that the defendant be ordered to offer the plaintiff a position as a cost accountant before employing or transferring any other person to such position in the Portland office; and that the plaintiff have and recover as compensation one year's salary at the entry level for cost accountants in the year 1967 and the sum of $5,000 as attorneys fees.

This memorandum opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). The plaintiff's counsel will submit an appropriate form of judgment.